**Jack Mason CLARKE**

v.

**PROTECTION SERVICES, INC, et al.**

Supreme Court of Tennessee,
Special Workers' Compensation Appeals
Panel at Nashville.

October 13, 2000 Session.

April 6, 2001.

Richard E. Spicer, Nashville, TN, for appellants, Protection Services, Inc. and The Travelers Insurance Company.

Tonya Crownover, Nashville, TN, for appellee, Jack Mason Clarke.

**JUDGMENT**

PER CURIAM.

This case is before the Court upon Applicant's motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be DENIED; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Court further recommends

that the Special Workers' Compensation Appeals Panel opinion be published.

Costs will be assessed to Jack Mason Clarke for which execution may issue if necessary.

DROWOTA, J., not participating.

JOHN K. BYERS, S.J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, J. and TOM E. GRAY, Sp. J., joined.

## OPINION

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tennessee Code Annotated § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. The trial court found the plaintiff suffered a compensable injury and entered a judgment which found he had sustained a sixty-nine percent vocational impairment to the body as a whole. The trial judge also awarded temporary total disability benefits and medical benefits. We reverse judgement of the trial court.

The controlling issue in this case is whether the evidence supports the finding that the plaintiff suffered a compensable injury.[1]

### Facts

On February 24, 1997, the plaintiff left work as scheduled. He was scheduled to be off the following morning. However, the branch manager for the defendant, Jeff Lang, discovered the plaintiff was needed at work on the following day. Mr. Lang called the plaintiff at approximately 4:00 p.m. and asked him to come to work.

The plaintiff refused to come to work and according to Lang, refused to tell him why he would not do so. Because of this incident, Lang fired the plaintiff. Later, the defendant learned that plaintiff was required to be in court on the morning of February 25th to respond to a speeding ticket he had received while operating a company truck. The ticket was the second ticket the plaintiff had received while operating a company truck. Under the company policy, the plaintiff would have been discharged as a result of the second ticket.

The plaintiff testified at trial he told Lang he had to go to court.

The plaintiff called Lang back several times and testified that in one conversation he said to Lang:

[a]nd I said some unpleasant words to him and I told him what I thought of him and that it was baseless, and I did say to him at the time that since you did fire me I am going to sue you and I'm going to hold you responsible for this because this is not right . . .

At approximately 6:30 p.m. on the date the plaintiff was fired, Joe Bean, a supervi-

---

1. The defendant also raised the following issues:

The trial court erred when it awarded plaintiff permanent partial disability benefits because plaintiff failed to establish any permanent vocational disability; alternatively, plaintiff's award was excessive.

The trial court erred when it awarded plaintiff temporary total disability benefits during a period when plaintiff was working and because there was no medical proof to support total disability after plaintiff was terminated.

The trial court erred when it awarded plaintiff reimbursement for COBRA benefits, and when it awarded plaintiff, not the health care provided, unpaid medical expenses.

The trial court erred when it found that plaintiff had given adequate notice as required by Tennessee Workers' Compensation law.

The trial court erred when it failed to consider facts that show plaintiff has been less than truthful in matters related to his workers' compensation claim and that plaintiff was motivated by revenge and anger, not an actual work-related injury, to pursue this claim.

sor for the plaintiff received a call from Baptist CentraCare to report the plaintiff had come to that facility for treatment of a work-related injury.

The plaintiff claimed he was injured at work on February 24th when a post driver fell and struck him on the left arm. The plaintiff claimed he told a fellow employee this had occurred. A statement of the employee was admitted by the trial court. In the statement the employee said the plaintiff did not tell him he was injured by a post driver or by its falling.

On March 26, 1997, the plaintiff filed a complaint in which he alleged he had sustained a gradual injury, i.e., carpal tunnel syndrome, as a result of working for the defendant. On October 20, 1998, the plaintiff filed an amended complaint alleging he sustained a gradual injury of thoracic outlet syndrome (TOS). In both complaints the plaintiff, claimed he was injured when a post driver fell on him the last day he worked.[2]

### *Medical Evidence*

Dr. Michael A. Milek, M.D., an orthopaedic surgeon, was the plaintiff's treating physician. On March 9, 1997, the plaintiff was seen by Dr. Milek. The doctor's notes on that date reflect "there is no history of injury."

On some date, inexplicably not identified by the court reporter, the deposition of Dr. Milek was taken. Dr. Milek testified the plaintiff gave him a history of "having some numbness and tingling in his hands basically below the elbow." The March 26th notes of Dr. Milek show an electrical study revealed the plaintiff's ulnar nerve, median nerve and thoracic outlet area were normal. Dr. Milek testified it was unlikely that the plaintiff's thoracic outlet

syndrome was caused by an injury and further was of the opinion the plaintiff's thoracic outlet syndrome was not caused by his work. He opined the problem was congenital. Dr. Milek testified that the plaintiff's work merely aggravated the plaintiff's pain and symptoms but did not anatomically or physically worsen the thoracic outlet syndrome.

Dr. Milek testified he found no objective evidence to support the plaintiff's complaints. All of the support was based on the plaintiff's subjective complaints. Further, Dr. Milek testified the diagnosis and findings he made were based upon the truthfulness of the plaintiff's subjective complaints. Dr. Milek found the plaintiff suffered a 20 percent medical impairment to each arm or a twenty-three percent medical impairment to the whole body.

Dr. John C. McInnis, M.D., an orthopaedic surgeon, examined the plaintiff at the request of the defendant.

Dr. McInnis found the plaintiff to have thoracic outlet syndrome and was of the opinion it was caused by the plaintiff's posture; he found the thoracic outlet syndrome was not caused by his work. He found the work aggravated the symptoms, but it would not cause any worsening anatomically.

Dr. McInnis testified that the plaintiff would feel tingling and numbness when the blood flow was cut off by certain positioning of the arms, such as overhead reaching. The condition would be temporary because the blood flow would return when the arms were repositioned. When asked if this in fact indicated the plaintiff suffered some permanent damage, Dr. McInnis said it was possible but not probable.

Dr. McInnis also found no objective evidence of thoracic outlet syndrome. He

---

2. The record reveals several acts of harassment were directed at the defendant employer by the plaintiff during the time between his termination and the lawsuit in this case.

found the plaintiff suffered from the condition based upon his subjective complaints. He found the plaintiff had sustained a six percent medical impairment of the body as a whole and that his condition was not caused by an-on-the job injury.

### Discussion

In determining where the preponderance of the evidence lies, we do not lightly disregard the findings of the trial judge. When the trial judge has made a finding based upon the witnesses whom the trial judge has seen, we give such finding great difference. *Humphrey v. David Witherspoon Inc.*, 734 S.W.2d 315 (Tenn.1987). In this case, the plaintiff's conduct and testimony raises significant questions on their face. Furthermore, the plaintiff's testimony and conduct moved the trial judge to say:

> I must admit that the credibility of the plaintiff has been a little bit worried, [sic] but the burden is so heavy on the employer and the burden is so light on the plaintiff to prove a work-related injury. I am just going to have to do some thinking and reading on this.

In fairness to the plaintiff, we note the trial judge said of a witness for the defendant:

> I am going to tell you something. Mr. Bean's testimony did not help. I know he is uneducated, but I didn't get a very good feeling from him.

The significance of the trial court's view of the plaintiff's credibility is the effect it has on the medical evidence in this case. Both physicians testified their findings were based upon the subjective reports of the plaintiff. The weight of the physicians' testimony must, therefore, be weighed in light of the trial courts concern about the plaintiff's credibility.

Little if any dispute exists between the two doctors concerning the plaintiff's con-

dition-they both say, based upon his subjective complaints, that he has thoracic outlet syndrome. Both say this was not caused by the work the plaintiff performed for the defendant, but pre-existed his employment, and both say the job might have aggravated his condition but such aggravation would only be temporary. Both physicians agree there is no anatomical change in the plaintiff's condition.

In order to receive workers' compensation, the employee must suffer an injury by accident arising out of the employment Tenn.Code Ann. 50–6–102(a)(5). An injury may be shown to have risen out of the employment if there is a rational connection to the work. *Fink v. Caudle, et al.*, 856 S.W.2d 952 (Tenn.1993). An employee may recover benefits if the worker suffers from a pre-existing condition or disability, if the employment causes an actual progression or aggravation of the condition which produces increased pain that is disabling. *Hill v. Eagle Bend Mfg. Inc.*, 942 S.W.2d 483 (Tenn.1997).

In *Thomas v. Aetna Life & Casualty Company*, 812 S.W.2d 278 (1991), the Court held that in all but the most obvious cases expert testimony is required to establish causation. We believe this rule applies also to determining whether a pre-existing condition is advanced or made worse in cases such as this case.

Beyond what we have already said, the two doctors have testified that any symptoms suffered by the plaintiff when doing work would only be temporary, i.e., only experienced while doing certain types of physical tasks such as working with the hands above the shoulders. These symptoms would disappear when the arms were lowered.

Based upon our in-depth look at the record in this case, we find the evidence preponderates against the finding that the

plaintiff suffered a work related injury or sustained a compensable aggravation of a pre-existing condition.

We reverse the judgment of the trial court in all things and dismiss this case.

The cost of this appeal is taxed to the plaintiff.